We'll hear case next in Case 10-1001, Martinez v. Ryan. Mr. Bartels. Mr. Chief Justice, and may it please the Court, in Arizona, almost all State and Federal claims for relief from a criminal conviction are raisable in the Arizona Court of Appeals on direct appeal. However, a claim that trial counsel was ineffective must be presented first to a trial court in what Arizona labels a post-conviction relief proceeding. Petitioner agrees entirely with Arizona's requirement that ineffective assistance of trial counsel claims go initially to a trial court, and he does not object to the label post-conviction relief as such. The issue in the case has to do with Arizona's insistence that Petitioner had no right to counsel with respect to the post-conviction first-tier review, portion of first-tier review, even though he did have a right to counsel in the appeal portion of direct review. And our position is that that distinction between what are two portions of the first opportunity for review of a conviction, broken up sensibly, but by the dictate of the State, into two parts, that that distinction cannot stand, especially in a case in which the first post-conviction proceeding started and ended before anything of substance happened in the State. Ginsburg. But if your main position is right, then wouldn't the same go for 2255 proceedings? I mean, this Court has said it makes sense to have the claims of ineffective assistance of counsel looked at by a trial judge first, not an appellate judge. And yet in 2255 proceedings, if you're urging ineffective assistance of counsel, you don't get an automatic right to counsel. In 2255 proceedings, counsel will be appointed only if the Court determines that the interests of justice so require. So what the proposition you're urging would have ramifications in the Federal system as well, wouldn't it? That's correct, Your Honor. And so 2255 would no longer be the interests of justice so required, because if it's your first opportunity to raise the point, the Court must appoint counsel for you. That's your view. In a situation, the Federal system is a little more complicated than Arizona, though not much, because of the sorrow. Because of the what? Our position would be in the Federal system, if a Federal defendant wished to file a 2255, that he would be entitled to appointed counsel, but as far as this case is concerned, only with respect to any claim of ineffective assistance of a trial. Do you want us to hold that there is a right to counsel whenever a Petitioner asserts a claim that could not have been asserted at an earlier point in the proceedings? Yes, Your Honor. With the caveat, if the State allows that kind of proceeding, one of the things I have a hard time keeping track of in this context is, unlike the right to counsel at trial, the Sixth Amendment right, where I think they have to give him a trial, we're dealing in a context where this Court made clear well over a hundred years ago that there doesn't have to be any review at all. The State could submit a Petitioner. That's a very far-reaching proposition. It extends well beyond claims of ineffective assistance of counsel at trial, wouldn't it? Yes. If many years after someone is convicted, an allegation is made that the prosecution failed to turn over exculpatory evidence and that the information supporting the claim has just recently come to light and could not have been previously discovered, there would be a right to counsel there. Would that be the case? If the State provided that proceeding, that, and the State would not have to. The State could have statutes of limitation or rules against successive petitions. That could be extremely strict if they're concerned about that. Why would it be successive if it could not have been raised earlier? Your Honor, as I understand the situation, we've got newly discovered evidence of perhaps a Brady violation. In that situation, if the State provides a proceeding for review of that, and it is the first opportunity for review, I think the implication of Douglas and Halbert is there would be a right to counsel. What if the State doesn't, but the Federal Government does? I mean, what if you say, you know, there's no State habeas available, you go straight to Federal habeas? I think that's correct, Your Honor. In the Federal system — So you haven't really given us a solution for the States. They can't — they can't stop this thing, right? Well, but the Federal system itself has a statute of limitation, though I believe that the statute would probably begin to run in Justice Alito's hypothetical with the discovery of the Brady violation. And so the Federal courts have set up the statute of limitation to accommodate that claim. And the States would be free to do that, too, if they wish. If you are permitted this counsel to raise a claim that could not have been raised on the direct appeal, is the counsel limited to that point, or can the counsel representing the client bring up other things? No, Your Honor. The right to counsel would apply only to the first-tier review issue. And so, for example, if counsel finds other issues and wants to pursue them, the State could say, we're not going to pay you for those. But could it be that the counsel could also bring up a Brady claim, a newly discovered evidence? So wouldn't we limit it to ineffective assistance of counsel? The holding in this case won't be so limited, but I would agree that Douglas and Halbert would imply that Brady would — at least many Brady claims would be such that the 2255 or the State postconviction would be the first opportunity to present. Alito, I'm sorry. What if the ineffective assistance of counsel claim is closely related to other claims that the Petitioner wants to raise in an initial postconviction relief proceeding? Counsel at trial was ineffective for failing to do A, B, C, and D, and all of those are bases for relief. And now I want to argue with new counsel in the first postconviction proceeding not only that counsel was ineffective at trial, but also that all of these other claims are meritorious. Are you saying that the counsel that — to whom the Petitioner has a right is limited to making only the ineffective assistance of counsel claim and cannot go on and represent the Petitioner on these other claims? I'm saying, Your Honor, that the State does not have any duty to pay the lawyer in those circumstances. Now, the kind of situation you're talking about, I think it's most likely to come up where — It's not a question of pay. I think Justice Alito was asking. Counsel says I've got a duty to represent my client zealously, so I want to bring up not only ineffective assistance of counsel, but these other matters. Your Honor, I think the appointment could be limited to the first-tier review. I'm sorry, I don't — I don't understand how that works. The claim is, say, for example, you were ineffective because you didn't raise a Batson claim. Surely he gets to pursue the Batson claim once he establishes an ineffectiveness. Yes, Your Honor, and in fact, in that example, pursuing the ineffective assistance claim requires pursuing the Batson claim. So the lawyer — the State would be required to provide counsel not simply to raise the threshold ineffectiveness argument, but to go ahead and raise the arguments as to which he was ineffective. Well, Your Honor, in the situation in which the ineffectiveness of counsel is based on the failure to make a Batson claim, the failure to make an objection at trial, I would agree with you absolutely. In my experience. Scalia, what about other claims that don't follow on, I mean, other claimed errors in the trial? You say the State doesn't have to pay for that representation. Does counsel keep timesheets on the various issues, 12-minute intervals? And the State pays for some issues and not for other issues? Absolutely, Your Honor, it happens. Routinely in the State system, the appointed counsel have to submit detailed billing statements. How does this work now, counsel? How are you proposing this work? Right now in the Federal system, a pro se litigant comes in and says, I have an ineffective assistance of counsel claim. Most district courts say, ask the attorney to submit an affidavit, and then decides whether on the face of the claims there is reason to appoint counsel and hold the hearing. Under your theory, every State would be obligated to appoint counsel ab initio to check out whether there is the potential for an IAC claim? Well, I think the States could run this in different ways. The way in which Arizona does it makes sense to me, which is that the — there is a form. Form 24B. It's a very simple form. It doesn't require stating any substantive grounds. It really just says I would like to challenge my conviction through post-conviction relief. In the very same way that notices of appeal. So what you are essentially saying, every State is obligated to appoint an attorney on the first level? Every State is obligated to treat these, what are really parts of the appeal, the initial appeal, in the same way they do the rest of the appeal. Counsel, there is a huge reliance interest that has developed since Finley and its progeny, and States don't routinely appoint post-conviction counsel. Your Honor, I'm not going to do about that reliance interest and the burdens on States. Well, Your Honor, I guess I would say two things about that. One, there are a fair number of States that do appoint counsel routinely. Well, I know for a fact that most do in capital cases, but I don't know if that's the same figure for non-capital cases. I don't know the percentage, Your Honor, but I know there are several States. Breyer, I don't understand. Could you answer the original question that Justice Sotomayor asked? She said, what happens in Arizona? You said a prisoner or defendant, he's been convicted, gone through his first round of appeal, he's given a form, which you said is a simple form, do you want to proceed in collateral review? And he answers, yes. Then does Arizona appoint a lawyer or not? Yes. All right. Then what are we arguing about? He had his lawyer. He didn't have an effective lawyer. Ah. So now you're talking about the second round. You're talking about does he have a right to a lawyer when he wants to claim that the first lawyer that they gave him on collateral review was ineffective? No, Your Honor, that's not the issue in this case. What is the issue? The issue in this case is whether the ineffectiveness of the first postconviction counsel constitutes cause to excuse. All right. So why? That's what I thought, actually. And I don't understand what all the briefs are about, and I must be missing something, about whether they're all going to have to appoint lawyers or not in these different States. It seems to me that has nothing to do with this case. This case comes out of a State that does appoint lawyers, and the question is whether you, your client, should have, from your point of view, at least one full effective chance to say, every lawyer I've been appointed, I've gotten 100 and they're all terrible, and or whether the State can block that from being heard in habeas by saying, oh, no, we gave him 19, and the claim that all 19 were ineffective, he can't even raise. That's the issue. Is that it? Well, Your Honor, actually, once we take it past 2, I'm not on board with that. No, no, but I'm not ridiculing, as it sounded, your claim. I'm saying maybe that's right. Maybe he's not going to win the claim, probably, but the question is, if his claim is, in Federal habeas, I have gotten 102 lawyers and 102 proceedings, and every one of them was absolutely ineffective, perhaps that habeas judge has to look at it and say, oh, I see, he's claiming he's never had one full effective chance to claim that his trial lawyer was ineffective because the other 19 were just as bad. I have to look at it if I'm a trial judge. Now, that's not a silly argument, in my opinion. That could be a winning argument. I just want to know, is that basically your argument? No, Your Honor, that's not my argument. Now, let's start at ground zero. Sorry. Everyone else wants to start. Why isn't that where your argument leads, to the proposition that you can never procedurally default irrevocably in ineffective assistance of counsel claim? Well, Your Honor, on a theoretical level, I don't think this Court's decisions in Douglas and Ross and Halbert give us a clear answer about whether there's a right to effective assistance of second postconviction counsel. But we want to know what rule you're advocating in this case. We want to know why you're not advocating for what Justice Breyer and Justice Alito indicate is an endless right to claim that all previous counsel were ineffective. You say, oh, no, you're not arguing that. What is the rule that you are arguing for? What limiting principle do you have so that we do not have an endless right of counsel? Well, Your Honor, the theory that you get counsel for first-tier review limits it to that first tier, because when you go after the effectiveness of this — of the first postconviction counsel, that is necessarily going to involve review of the effectiveness of trial counsel. And that's the second. But I understand that, but what is it that prevents the Petitioner from saying that the first counsel in the collateral proceeding was ineffective and that so was the second? Your Honor, I don't think there's a right to counsel, and therefore not a right to effective counsel, in the second. Breyer, but you can have a — you don't have to give him a counsel. Look, the State did give him a counsel in the first collateral review. That counsel was supposed to, according to him, raise the claim my trial lawyer was no good. Now we go to the next round. The State says, I'm sorry, you're on your own here. We're not giving you a lawyer anymore. Okay. That may count. He now has to know. He has to make the argument himself. And therefore, he goes and makes the argument himself, and now he's in habeas and he can argue they got it all wrong. He's not blocked. That's correct. All right. So there isn't an issue in this case about giving people counsel on that view. There is an issue about if you do give them counsel, then they have to be able to have an argument later that you did it ineffectively. That's a different matter. That's a question of whether you're blocked in habeas and can't even make the claim. All right. Forget it. I'll ask the other. Yes. Well, Your Honor, I think I'm on the same page with that example. Yeah. Okay. Yes. But there can't be a claimant. Can I leave this argument with the judgment that you've offered me no limiting principle on how many proceedings there must be before there is an end to the argument that previous counsel were inadequate? I understand. In this case, it was the first counsel in the first collateral proceeding that we're talking about. But why couldn't it be the second? You don't give us a limiting principle. Well, Your Honor, it's If you want to say there shouldn't be, then that's fine. No, Your Honor, there should be. And the merits, the Petitioner's merits brief devoted quite a few pages to both the theoretical problems with the infinite continuum of litigation and the practical limitations. And let me turn to the practical ones. Mr. Bartels, before you do that, I mean, I understood you to be saying that you would draw a line after the first post-conviction proceeding, is that correct? Yes, that's correct. And the briefs go back and forth as to whether that line, you know, what lies behind that line. But you would draw the line there. Yes, Your Honor. Theoretically, and the State has the wherewithal, given McCain, to draw the line anywhere it pleases. It could just say, you get one post-conviction. What I understand you to be saying is exactly that. A line has to be drawn somewhere, enough is enough, it can't go on forever. Yes. And the sensible place to draw the line, in your view, is after the first tier of review. That's your argument, right? Yes, Your Honor, because I But the problem with that is that you can answer that by saying, yes, we have to draw a line someplace, and the Court has already done it, and it did it in Douglas, and it said it was after the first tier of review on direct appeal. It's exactly the same argument, except where the law stands now, the line is drawn at a different place on the same principle. It has to be drawn someplace. That principle doesn't work very well in a system like Arizona's, where you can't bring this one claim on the direct appeal, and you can, and Mr. Martinez, well, you can file your first post-conviction and litigate it while the appeal is pending before it's final. So you would be happy with a system that said, no, you don't have to raise it on collateral review, you have to raise it on direct appeal, which is very unworkable, because if you're arguing ineffective assistance of counsel in the direct proceeding, presumably it's usually the same counsel, he's not likely to bring the claim, that would be worse for criminal defense than the system that's there now. No, Your Honor. The – if direct appeal is not going to encompass possible claims of ineffective assistance, you're not going to be able to have the same counsel on appeal. Well, but the person who decides what arguments you're going to make on appeal is usually the person who handled the trial in these types of cases. No, Your Honor, that's not true in Arizona. In Arizona, the usual case in criminal cases is that somebody else handles the appeal on direct appeal. Yeah, maybe from the same office, but I agree that that would have to change if ineffective assistance of counsel were part of the direct appeal. And the other thing that would have to be done, and this is done in some States, is that you have to raise it in direct appeal, but most, as this Court recognized in Massaro, most ineffective assistance claims can't be dealt with on direct appeal because of a lack of evidence. They need more evidence, so it's going to have to be set up. Ineffective assistance of appellate counsel certainly can't be dealt with on direct appeal, right? No, that's what I'm saying. So even if you get a different counsel to take the appeal, you could always claim that that counsel was ineffective in habeas, right? Your Honor, I – two things about that. First of all, the State does not have to provide a review of the effectiveness of appellate counsel. If it does so, I would still say that that's going to end up having to be second opportunity review of the claims that appellate counsel failed to raise. That's got to be the basis for it. If there's a right to counsel whenever someone asserts a claim that couldn't have been raised earlier, why does the State not have the obligation to provide counsel to contest the constitutionality of the representation that was provided on appeal? Well, Your Honor, the reason is that in terms of this first-tier, second-tier analysis from Douglas and Halberd, you're not going to be able to look at the effectiveness of appellate counsel without looking at the issue of prejudice. And that's going to require what is second opportunity review of the merits of the claim that the appellate lawyer didn't raise. But that's the second opportunity for that review because the direct appeal was the first opportunity. I think in the end, though, just a Matthews versus Eldridge procedural due process analysis works better. And the critical factor is what's the risk of an error in the absence of counsel? Well, the first time around, the risk of error involves what's the probability that the trial judge made a mistake that's prejudicial? By the time we get to the postconviction that's challenging appellate counsel's effectiveness, now it's the probability that the trial judge was wrong and that the appellate lawyer was wrong. And so it's exponentially low. It at least provides a basis for safety. The trial judge doesn't have to be wrong for there to be an ineffective assistance of counsel claim at trial. No. No. I'm sticking with the example of ineffective assistance of appellate counsel. No. No. Trial counsel. I'm sorry. Kagan. Kagan. I wonder what you would say some of these statistics suggest that these claims exceed very, very rarely. So by the analysis that you just used, this kind of balancing analysis, why we should even go so far as you would have us go? Well, Your Honor, it would be because Douglas and Halbert have done that balancing and said in this situation, first-tier review, the probability of an incorrect result without counsel is sufficiently high that there should be counsel. And that's really the disagreement between Justice Douglas and Justice Harlan in Douglas. Justice Harlan didn't think the lawyers mattered that much. The post-conviction application would go to the trial judge, right? Yes, Your Honor. So it goes to the trial judge with this Andrews-type brief that doesn't raise ineffective assistance of counsel, but it's such an obvious claim to make that when the judge reviews that Andrews brief, if the trial judge thought that this defendant was abysmally represented, wouldn't the Court say, sorry, I'm not going to accept this Andrews brief? It seems to me that you – there was a flagrant ineffective assistance of counsel and you should have raised that. That's a viable issue. So I'm not going to accept your brief. I mean – I think there would be something like that with the right to counsel for these ineffective assistance of trial counsel claims. So if the judge reviewed the Andrews brief, really thought there was an ineffective assistance of counsel claim, a valid one, the judge would have spotted the issue and it would have been – and it would have been argued on that first. Are we talking about the Martinez case itself? Yes. In the Martinez case, there was an Andrews brief, right? There was, Your Honor, but it's nothing but a summary of the trial transcript and provides no basis for the trial court. The problem with ineffective – Doesn't the trial court – I mean, the excuse of counsel is not automatic. The trial judge has to look at it and say, yes, there's no issue for you to pursue, so I'm going to excuse you. Well, under the current system, the trial judge has no duty to make any Andrews determination because the Arizona courts have held there's no right to effective appointed counsel. Thank you, counsel. Mr. Catani. Mr. Chief Justice, and may it please the Court, I would like to focus on three points. First, Petitioner is advocating a significant change to this Court's jurisprudence that does implicate the State's reliance interest on Finley and Giarratano. It's not a modest change. Could I ask you about your interests here? Because your State is one that does appoint counsel, so you already have the cost there. I'm just wondering, in your brief you talk a lot about the excessive costs that this would impose on you. And I'm just wondering where those costs come from if you appoint counsel already. And I know some other States are in a different situation, but as to you, where do the costs come from? I think they come primarily from the logical extension of the rule that would require a second postconviction proceeding to litigate claims of ineffective assistance of first postconviction counsel. Right now, those claims are routinely rejected under Finley and Giarratano because there's no constitutional right to counsel. Under the theory, and I don't think there's really been advanced a principled basis for limiting the rule that's been advanced, and certainly under the theory that's been advanced. Well, but if we just said there is a, you know, we can only draw a line in this context, and we're going to draw the line here, and this is where it sticks, what are the additional costs to you? Well, the additional costs would be implicated with a second postconviction proceeding. Well, that's only a cost if that second counsel, however it's secured, can actually make a credible or sustainable claim that appellate counsel, the first tier counsel was ineffective. Well, I think it's the nature of ineffective assistance claims. They are easy to raise and difficult to litigate. It's not difficult to raise, to assert ineffective assistance. It's very obvious in the context of capital cases where an assertion is my attorney was ineffective at sentencing for failing to raise additional things to litigate. Sotomayor, Federal courts handle them routinely. Pardon me? Federal courts handle them routinely on papers, and most of them are denied. Is the State system different? Where first level counsel, appellate counsel, postconviction. First level counsel raises ineffective assistance of trial counsel. How many of those cases end up in hearings? I don't have the statistics. They do not generally result in evidentiary hearings. Exactly. Very few. In noncapital cases. Certainly in capital cases, I think the majority do. Could I go back to just clarify the record for a second? Yes. What authorized Leavitt to file the postconviction relief motion? Wasn't he appointed simply to prosecute the direct appeal? Harriet Leavitt was appointed to prosecute the direct appeal. What gave him the authority to file the 32 motion? Obviously, he didn't seek his client's approval, because the client, when he received the motion, said, I don't understand what you're saying. I only speak Spanish. So what gave Leavitt the authority to do what he did? Well, she was representing Mr. Martinez, and the rules allow the filing of a postconviction petition. By an attorney appointed just on the direct review? Well, I don't think there was anything that would prevent her from representing him in a number of different ways. If she saw something that she thought needed to be raised in a postconviction case. So what would have been the tactical advantage of doing what she did? What conceivable reason was there for her to file the Rule 32 motion before direct review finished? Well, I don't know that there was necessarily a tactical reason. The reason would be in some cases that if an attorney views the case as having a potentially meritorious issue on postconviction, you get relief earlier. Well, you know that she didn't. So answer my question. What reason did Leavitt have, strategic or otherwise, to file the Rule 32 motion? I don't know that she had one. There was some indication in the record that there was some evidence that she wanted to raise an issue that the victim's diary would have contained some exculpatory information, and that would have been something that would have had to have been developed in a postconviction case. But she files essentially an Anders brief that says, I don't see anything. What was the strategic reason for doing that? What conceivable strategic reason? If she thought that there would be a claim, but after looking at it further, decided that the claims were not colorable, is I think what happened in this instance. Is it routine or does it happen often for lawyers who perceive a trial issue that can only be raised on collateral review to think that it makes sense to raise that right away so that the appeal and then the appeal is delayed until that's resolved? Well, it is what happened in Arizona frequently prior to the Sprites decision. And historically, counsel was allowed, counsel were allowed to raise claims of ineffective assistance and stay the appeal. And that was the practice previously. So it's not necessarily unusual that an attorney reviewing the record might decide that there's some issue that could be raised in postconviction. All right. Breyer. This is not my argument. I don't want to make this your friend's argument. In Arizona, there was a trial, and the defendant thinks trial counsel was inadequate. Then there was a collateral review, and Arizona appoints a lawyer for that. And after that, the Arizona courts thought, no, he was adequate at trial. This particular defendant wants to say, but that lawyer was inadequate, too. In fact, it was the same one, hardly surprising. All right. That's his view. Now, when he makes that argument in Federal court, I guess he's going to be met with a claim. Since Arizona didn't have to appoint the lawyer for collateral review, it doesn't matter what that lawyer does. Is that right? Well, I think it's better viewed through the lens of procedural due process. If we're looking at what are the procedures that are available to a defendant to raise a claim of ineffective assistance of trial counsel, one of the ways that you can do that, that certainly goes a long way to satisfying procedural due process, is to appoint counsel. It could be accomplished without appointing counsel, certainly having some. No, but I don't guess where I'm going, because maybe nobody wants to go there. Just follow the questions. The question is, if he tries to make the claim he does want to say that my first lawyer was no good at trial, and my second lawyer, who by coincidence was the same in the collateral proceeding, was no good either, then the State comes in and says, you can't make that argument now because we had a proceeding called the collateral review proceeding. We didn't have to give you a lawyer there, but even if that lawyer was inadequate, you lose because we didn't have to give you one. Am I right about that? That's what I want to know. Well, I think you're not right from the standpoint that we do have to provide procedural due process. And so the question is whether that was enough. All right. No, no. You say, I'll grant you. It is enough to give him a lawyer. Okay? It is enough. But you have to give him an adequate lawyer if you give him one. If you give him one. You don't have to give him one. But if you give him one, it has to be adequate. Now, what about that? Well, I think that goes well beyond this Court's previous position. All right. It does. That's what I think we're at. Now, why not say this, that every defendant has to have one fair shot at claiming that his trial lawyer was inadequate. And the State doesn't have to give him a lawyer at collateral review, but if it does, then that lawyer, he can say, couldn't make that claim because he was inadequate. So you say, fine, they can make that argument in habeas. I bet they never win it. But somebody might. He can make it. So what would happen would be that the habeas judge in Federal habeas would read the piece of paper, he'd say, what's the ground for thinking this, and then he'd make his normal kinds of judgments. Now, what is — is there anything wrong with that view? Is it absolutely blocked by precedent? It seems to me to relieve the concerns of the States about worrying about having to appoint a lot of lawyers, and it gives him a fair shot to make his argument. Well, I think it is blocked by precedent, certainly by Finley and Giarratano. The problem with just shifting — because this Court has said that there is no right to counsel, and thus no right to the effective assistance of counsel in post-conviction. Well, that's where you'd have to make the exception. You'd say, if you give him a counsel, he does have the right to an effective assistance of counsel insofar as the ineffectiveness would prevent him from raising a claim that, to be fair, the trial itself has to be, has to — he has to have that about the trial itself. That exception, there would be that exception. Now, is there something in those cases that blocks that exception? Well, I think it does create an infinite continuum. No. Well, in a sense, it does, but he's never going to win the infinite continuum. But the other problem with it is that— You never have to give him a lawyer at all. That's correct. But if you don't, then the problem is you shift over to Federal court, and on Federal habeas, you're then — you're then in the position of litigating claims that are untethered to any State court decision. And when we talk about whether it's blocked by current President, certainly under Edwards v. Carpenter, to allege ineffective assistance as cause to overcome a procedural default, there's a requirement that you litigate that claim in State court. The question is whether there's cause external to the Petitioner to overcome the procedural default. So if you went down that road, would the Petitioner representing himself or herself not have to show that, I would have raised a claim of ineffective assistance of trial counsel, and I would have won on that, were it not for the fact that the State appointed counsel for me and led me astray and prevented me from raising this meritorious argument. Isn't that where that would have to go? Well, I think it would, but it's even more problematic here in that the procedure is that the attorney files a notice, gives a notice to the defendant that she's been unable to find any colorable claims, and gives the defendant an opportunity to file his own pleading. So it's somewhat illogical to think that if we just grant a second post-conviction proceeding, that the defendant is going to be in any better position than he's in, in this type of situation where he's advised that the attorney says, as is routinely the case, I'm unable to find colorable claims, and then the defendant is given an opportunity to file his own petition. And how much time, how much time in the procedure you describe, appointed counsel does inform Martinez, I'm not bringing up any of any claims for you, so if you want to pursue relief, you have to do so on your own. How much time would the defendant have? How much time remain? I don't recall the specific time. I believe it is in the brief. I'm sorry, I don't recall the number of days that were remaining. But certainly a defendant can request additional time if the period of time is very short at that point. Extensions are routinely granted in those circumstances. Mr. Kidani, if you handled this through the regular appeals process, the person would receive the benefit of counsel. Is that correct? Rather than shuttle this over to the post-conviction review process. Well, the person, here he receives the benefit of counsel because it's appointed in Arizona. He receives the benefit of counsel. If your question is, would he be entitled to the effective assistance of the attorney developing that record? Yes, exactly right. And I don't think so, necessarily. I think that's a different, I think the attack on the effectiveness of collateral review of trial counsel is itself a collateral attack. And I think under Finley and Giarratano, and I think the distinction this Court has drawn between direct review and collateral attacks is one that should be maintained. And in theory. But those were cases in which you could not raise, pardon me, in which you could raise the particular issue at hand. But that's not this case. Well, I don't think it's ever. The question is whether or not the rationale of those cases, which you state correctly, is applicable to a different set of circumstances. Well, I'm not sure I'm following because I think the procedure that Arizona's following is something that was in play at the time of Finley and Giarratano. What Arizona does is not extraordinary. It really follows what's been recommended in Massaro that claims relating to But those were, correct me if I'm wrong, cases, those were not cases in which the issue could only be raised on collateral. Well, I think in Massaro, this Court noted that it's, it would be rare for any, for a defendant to be entitled to relief on a claim that could be raised on direct appeal. Well, Massaro indeed said that there are good reasons for withdrawing this issue and putting it in a different kind of process. So suppose the State does this, and some States do it. They say, in the direct appeal process, we're going to remand this issue back to the trial court because the trial court is good with the facts and can make an evaluation. As part of the direct appeal process, this remand, would the person then be entitled to effective assistance of counsel? It's a difficult question. I don't think they would because I think it's still a collateral proceeding to address the effectiveness of trial counsel. Even though now it's part of the regular appeals process, it's just the way, because of the issues that we recognized in Massaro, the State has decided to structure things in this way. I think more important than the label that's been put on it is the nature of the argument that's being advanced. And it's a collateral attack. Whether it's — whether a State chooses to call it a part of the appeal, what happened in Arizona previously was that it would be. So now you're creating a different rule. You're saying anything which somebody determines is appropriately raised as a collateral attack, even if there's been no first review of that question, there's no entitlement to counsel. Well, I think that's the logical extension of what this Court announced in Finley v. Jaritano — Finley v. Jaritano, that we've drawn this distinction. I don't think, as Justice Kennedy said, that we ever really considered that question in Finley v. Jaritano because we were assuming there that all the things had been through the appeals process. But I guess I'm not certain that the timing would make a difference of when — of whether you've had a direct appeal first or whether the collateral proceeding occurs first. In either case, the collateral proceeding is a non-record-based attack on the conviction as opposed to the direct review, which is a record-based review of the conviction. So the timing I don't think is as important as the nature of what's happening. It's a non-record-based attack on the conviction. Well, Justice Kagan, the question indicates that there are States, as you know, where on direct appeal they can allow for an evidentiary hearing on IAC. And as I understand your answer is that if that happens, the proceedings that precede the resolution of the issue on direct appeal, being probably conducted by the same counsel who's taking the direct appeal, can be conducted and he can be — and the counsel, he or she can be inadequate in the conduct of those further inquiries. That seems to me very strange. Well, I don't think we're suggesting that that would be the desired outcome. And it's simply that drawing the distinction between collateral— It's a suggestion that there's no constitutional right to effective assistance of counsel on direct when he conducts some supplementary proceedings. That's very strange. Well, I guess the suggestion is that it's a collateral — that's a collateral proceeding. If you stay the proceeding and go back and address ineffective assistance, that that would essentially be a collateral proceeding. You mean — it makes no sense to me that happens quite frequently on direct appeal where a variety of issues are raised and the court — the circuit courts or the appellate courts send it back to trial counsel to develop the record further. Your position is every time there's a sending back, that stops the need for effective counsel? If they've sent something back for a new hearing, I think that's something different. I think you've— Is that involved in this case? Do we have to decide this for this case? I don't think we need to. I think it's clear that— It's another case. It's very interesting. But the reason I think it's relevant is that if you were to say that there needed to be effective assistance of counsel there, then I would have asked you what is the difference between this case and that case. So that's the reason it's relevant to this case, because the difference is really just one of labels. Well, and that's why I think it's more important to assess the inquiry that's being done, whether it's a collateral inquiry as opposed to whether we're labeling it part of the direct appeal or not. And if it is a collateral inquiry, then it makes more sense, I think, to couch it in terms of this is collateral review. But certainly I think there's— There seems to be a rational line between collateral attack and attack in the same proceeding. I don't see anything irrational about that. Right? Yes. Yes, I agree. Yes. Would you explain to me why don't we consider this a first-tier proceeding? Because this post-conviction proceeding, it began at the same time as the direct appeal, but it ended before this case became final. So it was the first tier, because it was decided before the direct appeal. Well, it is a first-tier collateral attack. I would agree that it's a first tier. That's the first time that this issue is raised in a collateral attack. But I don't think that's determinative of the issue here. This Court has never said that every claim that can only be raised for the first time entitles someone to counsel. And that exception, that would swallow the rule. In Arizona, in most states where the types of claims that can be raised in post-conviction proceedings are generally limited to claims that could not have been raised earlier. So the rule that Petitioner is seeking really would swallow, the exception would swallow the rule that was announced in Finley v. Gerritano. Thank you, counsel. You've got to listen to the government. Mr. Wall. Mr. Chief Justice, and may it please the Court. Justices Sotomayor and Kagan, I want to go to your questions about the costs, because there are some very real costs here. We live in a world that is settled and working. Although this Court has drawn the line at the first direct appeal, 47 states, D.C. and the Federal Government, provide counsel in a first post-conviction proceeding, either as of right or in the discretion of the trial court or the public defender. Sotomayor, that's right. So there are 18 states that provide it as of right, 29 states in D.C. provide it in the discretion of the trial court or the public defender, and then the Federal Government obviously in the discretion of the district courts. And so what Petitioner is doing by constitutionalizing that area is shifting resources to a subset of ineffectiveness claims. Well, it's pretty — it's small comfort to the lawyer — the client who doesn't get one that everybody else does. Mr. Chief Justice, I understand, but I think this is an area where states are permitted to draw different lines. And what Petitioner is saying — take the Federal system, for example. Petitioner's rule would say a Federal prisoner can walk in under 2255, and by making an allegation of ineffectiveness of either trial or appellate counsel, he's entitled to appointed counsel without even, I take it, a showing of colorableness. Well, not if you adopt the one preceding rule that I think counsel for the Petitioner was suggesting. He suggested Arizona is one of those few states where you can only raise this issue on collateral, and therefore you're entitled to effective assistance of counsel on that collateral. And he would stop there for statistical and for reasons, for probability reasons, rather. I think that's exactly where he would stop. I think it's very difficult to explain why his rule doesn't require him to go further. Because by saying that first here is not a stage of a case, as this Court's always meant it, but it applies claim by claim and lawyers are going to represent you on only some claims and you'll pro se, you'll file others, he ends up with two problems. One, he has to concede, as he does in his reply brief and as he did in response to Justice Alito, that he's going to say the same thing with regard to a lot of other claims that are typically raised in habeas. And second, he can't find a limiting principle, because when you come in in your second or your third or your fourth post-conviction proceeding and you say all my previous counsel have been ineffective, that's also the first time that you've been able to say it, and you'll be making the same claim. I'm entitled to have one constitutionally competent lawyer argue that my child counsel was ineffective. Breyer. What about not going that far? What about saying in this case, in this case, Arizona did give him a lawyer. In this case, it was the same lawyer. In this case, the proceeding was filed prior to the completion of the appeal and ended before the completion of the appeal. So for this case, this counts as the one round of proceedings, and therefore his client can in fact assert that that single individual who was his lawyer was incompetent in those proceedings that ended, didn't end prior to the termination of the appeal, ended first. Here's the primary problem with that, Justice Breyer. This Court said in Coleman and before that in Murray v. Carrier and in Wainwright v. Torna, that if you don't have a Federal constitutional right to counsel and the States or Congress go beyond what they're constitutionally required to do and they cannot thereby give rise to a due process claim. Breyer. No, but it didn't face the issue of what about a claim that you have a constitutional right to bring up at least once, and this is the first time he was able to bring it up. So, in other words, Coleman didn't face this problem. It's as if you couldn't bring up the claim that the judge was sleeping until you got to collateral proceedings. A State could have such a rule. I don't know why they would, but they could. But if they did, it would be your first chance ever to attack that trial process. And so isn't Coleman, in its effort to bar relitigation, actually rather beside the point? Justice Breyer, I think we just see the case in fundamentally different ways. His first opportunities to raise his trial ineffectiveness claim was in his first post-conviction proceeding. And he had the opportunity to raise it, and his lawyer didn't. And what he's coming in and saying now is not, I was deprived of an opportunity to raise it, as in your hypothetical, but I had the opportunity and I didn't, and we should excuse that. Breyer. No, we're saying it the same way. Just as if his lawyer, when he could raise the fact that the judge was sleeping, didn't raise it because he was staring at the ceiling and had been drinking too much. Just as he could raise that point in habeas because it's his first chance to do it. So he could raise the point that the lawyer, the first time that he had the chance to raise the ineffectiveness of trial counsel, was incompetent, et cetera. Justice Breyer, I think this case presents a much narrower question, which is, when he comes in in his second post-conviction proceeding and says, although I didn't raise it last time around, I have cause to excuse that default, because my lawyer was ineffective, this Court's been clear in three different cases, that's only cause if he had a constitutional right to counsel in the proceeding that he's pointed to and that he complains about. So the question is, do you have a case that's not effective in the first post-conviction proceeding? Sotomayor, what you haven't told me is a reason why he shouldn't have had effective counsel in the first post-conviction proceeding. I mean, our entire line of cases under Douglas were premised on the fact that defendants would not be or couldn't be charged with the ability to prosecute their claims through direct appeal. Discretionary appeal, we said, the likelihood is they could do it on discretionary appeal because they would have a record from below, they would have competent counsel below who would make the best arguments possible. They could then pursue their discretionary appeals because they had something to work with. But if your first chance is to present ineffective assistance of counsel claim is a post-conviction proceeding, you have no record to work with. That's right. Just, Sotomayor, I think this is a very different case from Douglas and Halbert, which were grounded in a fairly fundamental equal protection concern, that indigent defendants would be denied a first look, maybe an only look, at their convictions and sentences. Here we're facing something very different. States like Arizona are giving direct appeals. Defendants are getting looks at their convictions and sentences, as the Petitioner   They're even providing lawyers in post-conviction review. only look at the effective assistance claim. So what would you say, Mr. Wall, if a State did the following? If it said, we're going to take out all Fourth Amendment exclusion claims and we're going to put that in a post-conviction review system, and you know what? There you're not entitled to an effective lawyer. Would that be all right? Justice Kagan, I think there are any number of claims that if a State tried to pull them out of direct appeal and locate them in collateral review, we might be able to say it's in running its obligation under Douglas, because those are the types of claims based on a trial record that ought to be, and always have, belonged to direct appeal. The question is, does a State act arbitrarily when it takes an ineffectiveness claim, which is the only type of claim that a State has tried to relocate into collateral review? And it moves that to the jury. Kagan, I'm sure the State would not say it was acting arbitrarily in my example. The State would say there's a good reason for it. Fourth Amendment exclusion claims are disfavored, they have nothing to do with innocence, they involve a kind of fact-intensive inquiry that is better done in a different proceeding. So I think that the State would have many good reasons. But, you know, it's also true that there you don't get a lawyer. Justice Kagan, I just — I think the Court's case law would — I mean, I think it would be a difficult question. The Court having said that under Stone, at least in the Federal system, the Fourth Amendment claims can't be raised on habeas. I think it would be difficult for a State to come in and say they have to be raised on habeas. Here the Court said in Massaro these claims are best suited to resolution on habeas, and there are claims that are traditionally brought on habeas. And at least for that type of claim, which is the only — I mean, the State's not trying to hide the ball here. All the State has done is take a claim that this Court has said belongs in habeas and say we're putting it in habeas. Not as in the Federal system where, although people can raise it as a practical matter, they're all decided on collateral review, or virtually all of them. It says we're just going to save people the trouble of briefing and raising it, and we're going to locate it to collateral review, not for an invidious or arbitrary reason, but for all the reasons that this Court gave in Massaro. So at least for that type of claim, I think it's permissible under the Fourteenth Amendment, leaving for another day whether it could do it with other types of claims that I do think probably belong to a direct appeal, and that would present very different constitutional problems if a State started trying to channel them to collateral review. But I — all Arizona has done is pick up on Massaro and say, absolutely right, these claims belong in habeas, and that's where we're going to put them. And collateral review— Sotomayor, it's unusual to me that the vast majority of States, 47, I think, is the number you gave, put this into post-conviction — give counsel at post-conviction review. Is it an empty promise if what you're giving is incompetent counsel? Well, I mean, it's a — Strickland is a very high standard. Justice Sotomayor, a number of States have found under their own constitutions or statutes a right to effective assistance of counsel. But it's a very different matter to say that when States go beyond what the Constitution requires in providing counsel, that counsel's performance there gives rise to a due process claim. And again, the Court's rejected that in at least three cases. And I think saying that it's cause to excuse a procedural default here, without saying that there's some underlying right to counsel, would require overruling those cases. Thank you, counsel. Mr. Bartels, you have two minutes remaining. Mr. Chief Justice, let me straighten out one thing about — it's not really about the record, about the facts. This is not in the record, and I'm really doing this for my friend's benefit. Harriet Leavitt was initially appointed to represent Mr. Martinez on appeal. She then moved to have herself appointed for purposes of the post-conviction review, and it was at a later date, not too much later, that she filed the notice. So that at the time the notice was filed, she was officially appointed counsel for purposes of post-conviction proceedings. And the Arizona Court of Appeals stayed their proceedings, which were ongoing. There was a notice of appeal to allow this to continue. The other point that I wanted to get to was the questions about other States where these claims are handled on direct appeal illustrate a couple of things about our argument. One is, it would be — seem very peculiar to say you have a right to appoint an effective counsel in Wisconsin or Utah on these issues, but not in Arizona, where the label, the claims, almost all of them require additional evidence. And that fact makes counsel even more important. Respondents want to say you have a right to counsel on review for almost all claims, but not the one where you need it the most. Roberts. Thank you, counsel. The case is submitted.